The opinion of the court was delivered by
Watkins, J.
This is a proceeding of mandamus to compel the cancellation of relator’s assessment for the year 1894.
It is as follows, viz.:
Money at interest ..................................................................................$111,783
Money in possession..................................................................................... 13,091
All other articles............................................................................................. 42,200
Total....................................................-....................................................$172,074
The grounds of relator’s complaint are, first, that under the heading of “ money at interest ” there is included “ income,” which, under the law, it is alleged, is not taxable; second, that under the item “ all other articles,” there are included shares of stock in the Nacional Acid Company and the Standard Guano and Chemical Company, said corporations being manufacturers, whose property and shares *1499 of stock are exempt from taxation under Art. 207 of the Constitution.
The answer of respondents is that the assessment is correct and the taxes thereon based are lawful and due.
The testimony shows on the first proposition that the item “money at interest” includes the net value of uncollected premiums due relator from its customers; that is to say, the total amount, less fifteen per cent; and, on the second proposition, it is that the item “ all other articles” includes two hundred shares of the capital stock of the Standard Guano and Chemical Company, a manufacturing corporation within the’ meaning of Art. 207 of the Constitution.
On this statement the court a qua pronounced judgment in favor of the respondents and the relators have appealed.
In this court the argument of respondent is that a tax on uncollected premiums of an insurance company is not a tax on income; that they may be a source of revenue, but they are not income, and that the assessment of them as property of the corporation is legal and valid. That the shares of an exempt corporation are taxable in the hands of any third person as the representative of the value of its shares of stock, and that the Legislature had not the power, by any mere omission, to extend an exemption so as to include assets of a corporation which have a pecuniary value which is assessable under the terms of the Constitution.
On the other hand, the contention of relator’s counsel is that its. uncollected premiums are not “ credits ” in the sense of the revenue-law of 1890 under which the assessment in question was made; that “ the shares of manufacturing corporations simply represent the capital of such corporations, and as such are exempt under Art. 207 of the Constitution,” and that “ there is no authority in the Act of 1890 to assess the shares of corporations other than that mentioned in Sec. 27, the capital and not the shares being assessable.”
I.
Taking the second proposition first, we have for consideration the questions, (1) whether the shares of the capital stock of a manufacturing corporation, the property of which is exempt from taxation pnder the provisions of Art. 207 of the Constitution, are assessable in the possession and ownership of another corporation whose prop -' erty is not exempt from taxation; (2) whether there is any authority *1500 under the revenue law of 1890 for the assessment of the shares of the capital stock of an insurance corporation such as the relator is, as property.
It will be observed at a glance that the assessment made against, the relator does not, prima facie, deal with either question which is propounded; but they are necessarily predicated upon the relator’s allegations and proof at the trial.
The assessment was made of “money at interest,” “money in-possession,” and “all other articles” — no mention being made of ■either the relator’s capital, or shares of its own stock, or the stock of any other corporation whatsoever.
Reference to the revenue law will show that it declares that there “ shall be levied annual taxes amounting in the aggregate to six mills-on the dollar of the assessed valuation of all property situated within the State of Louisiana, except such as is expressly exempted from taxation by law,” etc.
That it further declares that “the term ‘property,’ as herein used, means and includes * * * all movable property and chattels; all personal property; all goods, wares, merchandise and other stock in trade, in possession, on hand, and under control; * * * the cash value of all judgments, suits and causes of action; all rights, credits, bonds and securities af all kinds; promissory notes, open accounts, and other obligations; all cash," etc. (Our italics.)
And it further declares that “ all coins, United States and foreign, whether current, or uncurrent; all currencies, bank notes and other proper moneys; all moneys loaned at interest; all shares of stock in all banking companies, or associations, incorporated or non-incorporated * *• * ail other articles or things whatever possessing any money value.”
Then follows this sweeping provision, as if to make assurance doubly sure, viz.:
“ This enumeration shall not be so construed as to exempt from taxation any property or values not enumerated herein,” etc.
But that is not all, for it provides further, viz.:
“The above enumeration of assessable property is in no way intended to apply to the assets of banking companies, or associations whose shares of stock are assessable in lieu thereof under Sec.1 27, save in so far as is declared in said Sec. 27:” Sec. 1 of Act-106 of 1890.
*1501 From the foregoing it is quite plain that whatever course may-have been antecedently pursued by the General Assembly with reference to the assessment of the shares of stock of insurance companies and corporations, it was changed by the revenue law of 1890, so as to make all of their properties assessable without reference to their shares of capital stock.
The only exception to that rule is found in See, 27 of the act, and it runs as follows viz.:
“ That no assessment shall hereafter be made under that name, as capital stock of any National bank, State bank, banking company, banking firms, or banking associations, whose capital stock is represented by shares, but the shares shall be assessed at the actual value, as shown by the books of the bank, or banks, to the shareholders, who appear upon the books, regardless of any transfer not registered or entered upon the books * * * and all taxes so assessed shall be paid by the bank, company, firm or association, which shalj be entitled to collect said amounts from the shareholders, or their transferees,” etc.
“ It further provides that all real estate owned by the bank, company, firm, etc., * * * shall be assessed directly to the bank, company, firm * * * and the pro rata of such direct property tax, proportioned to each share of the capital stock, shall be deducted from the- amount of taxes assessed to the share under this section,” etc. Ibid., See. 27.
It will be readily perceived that the section provides a mode for the assessment of the shares of stock, and the real estate of banking institutions, generally, that is at once exceptional and different from all other assessments; and different, in some particulars, from any prior revenue law in reference to books, etc.
For Sec. 28 of Ant 98 of. 1886. which was under consideration and interpreted by this court, in Bank of Shreveport vs. Board of Assessors, 41 An. 181, provided that all yroyerty owned by the bank, company, firm, association or corporation, which is taxable under Sec. 1 of this act, shall be assessed directly to the bank, company, firm, association or corporation, and the pro rata of such direct property taxes, and nf all exempt property, proportionate to each share of capital stock, shall be deducted from the amount of taxes assessed to that share under this section.”
Consequently, the question of difficulty in that case was for the *1502 court to determine “the precise meaning of the language (of the statute) which required the deduction of all exempt property.1'1
Under the provisions of Sec. 27 of Act 106 of 1890 no such difficulty can arise, even with regard to the assessment of banks, because it distinctly provides “ that all real estate owned by the bank * * * shall be directly assessed to the bank;” and it further provides that the “ pro rata of such direct property tax, proportioned to each share of the capital stock, shall be deducted from the amount of taxes assessed to the share,” etc.
But with regard to other companies, corporations or associations, whose capital stock is represented by shares, there is no difficulty whatever, because there is no provision of the revenue law of 1896 which directs or requires an assessment of its shares, and consequently no question can arise with regard to any deduction at all. Yet it by no means follows that the shares are exempt from taxation by legislative intendment, or in effect.
That question is covered by the provisions of the next succeeding section thus:
“ That all other corporations, save those enumerated in Sec. 27 o this act, shall be assessed directly upon all property owned by the corporations which is taxable under Sec. 1 of this act,” etc. Ibid Sec. 28.
This is perfectly conclusive and requires no interpretation. All the property of any corporation other than a banking institution must be assessed on all taxable values of any and every kind; that is to say, on everything which gives value to its shares of stock, but not upon the shares of stock.
Does this method of assessment include shares of stock in other corporations which are exempt from taxation by the terms of the Constitution?
In Bank of Shreveport vs. Board of Assessors, supra, it was “ conceded that shares in banks, whether State or national, are liable to taxation by the State, although the capital of the bank may be entirely invested in United States bonds,” and that concession was made in view of the jurisprudence which is established in Van Allen vs. Assessors, 3 Wallace, 573; People vs. Commissioners, 4 Wallace, 244, and Bank vs. Commonwealth, 9 Wallace, 353; vide U. S. Revised Stats., Sec. 219. But the plaintiff in that case sought to reduce the assessment on its shares by deducting therefrom the *1503 value of non-taxable securities in its vaults upon which its business operations were predicated. This, our decision held, could not be done under the terms of the Constitution." But since that decision was rendered, as has already been shown, the Legislature has so altered the revenue law as to remit from assessment both the shares and capital of all other corporations and associations than banks, as such, and in lieu thereof directs and requires an assessment to be made of all their property, of any and every kind, which gives value to their shares or capital.
And in this regard the revenue law of 1890 makes another very important addition, viz.':
“But unless three months prior and continuous ownership can be shown in any holdings of national, State, or municipal bonds, or stock in any other corporation whatsoever, then the market value of such holdings shall be assessed to such corporation as so much money in possession.”
That was exactly the course pursued by the respondents in this instance.
But the converse of that proposition must be true, that if three months’ prior and continuous ownership of bank or other stock is shown, the holder is entitled to have same specially assessed.
Not only is that so, but the statute makes another important distinction, and that is, that the stock of even a banking corporation which is held by an insurance corporation is assessable to the latter as money in possession; or in other words, the stock of one company or corporation loses its identity by being carried into another corporation, and becomes subject to taxatiouas “ money in possession,” notwithstanding same may be non-taxable as a share of the stock of the corporation by which it was issued.
This principle has been frequently affirmed by this court.
In City vs. Canal Bank, 29 An. 851, it was held that the bank could not escape taxation by merely investing a portion of its assets, equivalent to its surplus, in non-taxable securities; but that such securities “ though themselves non-taxable, shall be counted, as they are used, and were designed to be used as assets of the bank for the purpose of affecting and extinguishing so much of its indebtedness.”
In State ex rel Jacobs vs. Assessors, 37 An. 850, the court approved the ruling in City vs. Canal Bank, and said:
*1504 ... “Even if private bankers stood upon the same plane as in orporated banks, and were subject to the same rules of assessment as to their capital, and were to be taxed only upon the surplus of their assets over their debts, they could not escape taxation by simply investing a portion of their assets; .equivalent to such surplus, in non-taxable United States bonds; but such bonds, though them•selves non-taxable, would, nevertheless be counted asa part of the assets, and as offsetting, to that extent, the liabilities.”
That the shares of stock of a corporation are property in the sense of revenue laws is the settled interpretation of this court, as attested by its opinion in Schreiber vs. Board of Assessors, 37 An. 908. In that case the' point was made that the plaintiff’s assessment was illegal because it contained one share of the capital stock of the New Orleans Cotton Exchange, which was non-taxable.because there was no provision of the revenue law making' it taxable. But the court said that was incorrect and cited the provisions of the revenue law, the terms of which are almost identical with those of the revenue law of 1890, and said:
• “ But it is manifest that the shares in other companies are equally declared included in the phrases movable or personal property; and even if this were not broad enough, the term property alone is ex-> pressly defined as meaning, inter alias, all shares of stock, and whatever possesses a money value. * * * If these shares of stock be not taxable it would be difficult to find any securities that are. They fall within the definition ,of property as including all shares of stock, and of course within the broader designation of whatever , has a money value.” See-paiticularly City vs. Mechanics and Traders Insurance Company, 30 An. 876.
In Parker, Tax Collector, vs. The Sun Insurance Company, 42 An. 1172, it was claimed by the defendant that certain property, viz.: certain State and city bonds, should be deducted from its assessment —the contention being precisely the same as relator’s is here — as exempt property. Of this claim the court say:
‘•‘•And the averment is made that the exempt property is worth more than the company’s shares of stock, and that a proper deduction thereof from the assessment would reduce it to nothing, and annihilate it completely.”
On fully considering the question, the court held:
“The failure of the assessor to deduct from an assessment against *1505 the ■ shares of stockholders of an insurance company the value of certain State and city bonds, which are owned by the corporation, and are exempt from State taxation, does not render such assessment void, L ecause they are not exempt property in the sense of the statute and the State Constitution.”
That decision quoted and approved Bank of Shreveport vs. Board of Reviewers, 41 An. 181.
The case was preceded by Home Insurance Company vs. Board of Assessors, 42 An. 1131, in which the effort of the plaintiff was to procure the deduction from its assessment of the Orossman bonds of the city of New Orleans as property which was exempt from taxation. The court say:
“The exemption claimed has been twice denied by this court. United States bonds and State bonds in which the capital of a corporation are invested are not deductible from the assessment of the shares. Bank of Shreveport vs. Board of Assessors, 41 An. 185; The Board of Liquidation vs. Thoman, 42 An. 605.”
It seems difficult to understand how a proposition that has been made so plain by repeated adjudications of this court could be misunderstood.
For the purpose of assessment a distinction has been frequently taken between the capital of a corporation and shares of stock belonging to its stockholders.- This distinction is fully illustrated in the opinion of' this court in Citizens Bank vs. Bouny, 32 An. 239, in which it was held that “ numerous decisions of the highest authority maintain that the exemption of the capital of a bank does not impair the. right of the State to tax the shares in the hands of the stockholders, and without so deciding absolutely we shall assume, for the purposes of this case, that the charter exemption of the capilal of the bank does not extend to the shares in the hands of the stockholders.” Citing numerous authorities.
A like principle governs our decision in City vs. Canal Bank, 32 An. 157.
And in Van Allen vs. The Assessors, 3 Wallace, 583, the Supreme Court said:
“ But in addition to this view, the tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal, and within the powers conferred upon it by the charter, and for the purposes for which it *1506 was created, can deal with the corporate property as absolutely as a private individual can deal with his own. * * * The interest of the shareholder, entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion to the number of his shares, and upon its dissolution or termination, to his proportion of the property that may remain of the corporation after the payment of its debts. This is a distinct, independent interest or property held by the shareholder like any other property that may belong to him.” People vs. Commissioners, 4 Wall. 258; Bank vs. Commonwealth, 9 Wall. 358; Citizens Bank vs. Bouny, 32 An. 239; Bank of Shreveport vs. Board of Assessors, 41 An. 181; Parker, Tax Collector, vs. Sun Ins. Co., 42 An. 1179.
But this proposition has been nowhere more clearly or more forcibly stated than it was in Home Insurance Company vs. Board of Assessors, 42 An. 1131.
In discussing and applying the principle announced in Bank of Shreveport vs. Board, 41 An. 185, the court said: The bonds in the quoted cases were United States and State bonds. In the case under consideration they are New Orleans city bonds. The latter are not more exempt than the former. They are all exempt from taxation, and the assessing officer can not directly list and assess them for the purpose, hut they can not, because of their exemption, he deducted from the total of the shares of the shareholders.
“ These bonds are more particularly the property of the corporation ; and the share of a stockholder can not always be assimilated to the capital stock of the corporation. They are carried to a separate account, subject to different rules, and are not always similar. They are the individual interest of the stockholder; an interest which accompanies the person of the owner, giving him the right to a proportional part of the dividends when declared, and to a proportional part of the effects of the corporation when dissolved.
“ The capital stock is more especially the property of the corporation.”
The object of the Legislature is manifest.
It was intended to prevent a double exemption. Otherwise a manufacturing corporation enjoying (he exemption of its capital from taxation under the provisions of Art. 207 of the Constitution could sell its shares of stock to an insurance company and procure *1507 the means of operating its business; and the insurance company could invest the earnings of its business exclusively in such stock, and have it exempted from taxation also.
By this means both businesses would be shielded from taxation, while only one is exempted.
The words in which the constitutional exemption is couched are these, viz.:
“There shall also be exempt from taxation and license * * * the capital, machinery and other property employed in the manufacture,” etc.
They do not necessarily carry the significance of exempting the shares of stock of any corporation; nor do they refer to any corporation as exempt.
The legality of former legislation recognizing a distinction between capital and shares of stock was maintained, and the language of the Constitution must be so construed. .It does not say “there shall be exempt from taxation the capital, machinery or other property of a corporation employed in the manufacture of textile fabrics; ” and by the creation of a manufacturing corporation for such purpose, a new and additional exemption of its shares of stock can not be created.
It is evident that the money which is invested in the shares of the stock of a manufacturing corporation constitutes the capital which is exempt from taxation; but those shares in the vaults of an insurance company, such as the relator, are quite as liable to taxation as non-taxable government bonds and other non-taxable securities are. Even more so; because it is, at least, questionable whether the shares of stock in a manufacturing corporation are non-taxable.
It seems clear that it was the intention of the Legislature — clearly expressed in the revenue law of 1890 — to reach and make liable to taxation this fruitful source of revenue; for in the very nature of things a corporation is not the possessor or owner of its own shares of stock. The very object of issuing stock is to obtain the money of others, who take and hold same in expectation of earning dividends arising from the successful operation of the enterprise.
Desirous of fostering manufacturing industries within the borders of the State, the Constitutional Convention proposed, and the people ratified, the exemption from taxation, for a specified period, of “ the capital, machinery and other property employed in the manufacture *1508 of textile fabrics, etc.; ” but that exemption lias ever been strictly-construed, and must not be extended to other subjects of taxation which are not clearly contemplated by it.
On this branch of the subject the judgment is undoubtedly correct.
II.
Are the uncollected premiums of an insurance company exempt from taxation as “income,” or liable to taxation as “credits” in the sense of the revenue law?
The provisions of Art. 207 of the Constitution will be examined in vain for an exemption of “income” from taxation, and the plain meaning of the term “credits” employed in the revenue law includes the uncollected premiums of an insurance company. Its language is general — all rights, credits and open accounts and other obligations.
They are broad enough to cover the uncollected premium of the relator.
We are of opinion that it was decided, if not by direct adjudication, at least by fair implication, that premiums in course of collection are taxable. Vide Liverpool and London and Globe Insurance Co. vs. Board of Assessors, 44 An. 760, and Railey vs. Board of Assessors, 44 An. 770.
These uncollected premiums are mere debts in the course of collection. They are assets which have not yet materialized into cash, not yet realized. This identical question was decided by the Supreme Court of Illinois in The Republic Life Insurance Co. vs. Pollok, 75 Illinois, 300, in which the court expresses itself thus:
“ It also fails to appear what amount constitutes the reassurance reserve. But it is said that the rea'ssuranee reserve and the premiums being collected are not subject to taxation. We fail to perceive why they are not, as they are funds and claims that would be, in the hands of a natural person. A merchant or other business man is taxed on the funds he has on hand, as well as on all debts owing him that are collectible or so regarded, and no reason is perceived why a corporation should not be required to contribute in the same way to the support of the government.”
In City of New Orleans vs. Fourchy, 30 An. 911, a question was raised as to the constitutionality of an income tax which was assessed under the Constitution of 1868, and the court said:
*1509 “ As there is no proof on the subject, and as the general rule is that incomes are taxable, we must hold that the defendant falls within the rule, and not within the exception.”
And in Forman vs. The Board of Assessors, 35 An. 825, a similar question was presented, and the court held:
“ We have no occasion to determine whether, under the Constitution of 1879, the Legislature has the power to levy an income tax. That question will be determined when presented in such manner as to render ils decision necessary.”
In Parker, Tax Collector vs. North British and American Ins. Co., 42 An. 428, the court simply say: “It is not necessary for us to decide whether or not, under the Constitution, the Legislature had the power to levy an income tax. It suffices to say, that if the Legislature had such power, it would be an indisputable condition of its exercise that the tax should embrace the incomes of all alike,” etc.
Outside of the foregoing decisions we are aware of no adjudications upon the question; and, in the absence of express constitutional exemption, positive precept of the Legislature, and judicial interpretation, we feel bound to deny exemption from taxation to the relator’s uncollected premiums.
It is therefore our deliberate conviction that our former opinion and decree were erroneous, and must be set aside and annulled.
It is therefore ordered, adjudged and decreed that our former judgment be annulled and set aside; and it is further ordered and decreed that the judgment appealed from be affirmed.
I concur in the decree.
Francis T. Nicholls, Chief Justice.
I concur in the decree.
Henry C. Miller.