ODOM, Justice.
 

 As the issues in these cases are identical, the cases were consolidated for the purpose of trial in the lower court and were argued together here. The only question involved is whether uncollected premiums on life insurance policies falling due during the current year are property and are taxable as “credits” as that term is defined by section 91, Act No. 170 of 1898, which reads in part as follows:
 

 “The term ‘credit’ includes every claim and demand for money, labor, merchandise and other valuable things.”
 

 These cases were' submitted on an agreed statement of facts, which shows that each of the plaintiffs is a life insurance company authorized to do business in this state, and that in the manner required by law filed with the assessor of Caddo parish for the year 1932 a sworn statement of its taxable property on forms furnished by the assessor for that purpose. The rendition as made was approved by the assessor and submitted to the Louisiana tax commission, which added to each assessment certain amounts as “credits.” These so-cailed “credits” were arrived at by taking the total of premiums, including both those which were paid for the issuance of policies and those paid under the terms of existing policies to continue the contracts of insurance in force for another year, and after deducting 25 per cent, allowance for agents’ commissions and collection, the remainder was divided by twelve in order to determine the “average” of all premiums collected for the year 1931. This average was assessed to plaintiffs by the tax commission as “credits” on which ad valorem
 
 *933
 
 taxes were to be levied and collected for the year 1932. In other words, the tax commission added to the assessments as “credits” the anticipated collections in the way of premiums of each of the companies.
 

 Plaintiffs appeared before the police jury and protested the assessment of these so-called “credits.” Their protests were sustained by the police jury, which recommended that the tax commission cancel them. The tax commission refused to concur in the recommendations and ordered the assessor to include them on the list of property to be assessed.
 

 Plaintiffs then brought the present suits to cancel the assessment of these “credits,” coupled with a prayer for an injunction restraining the tax collectors for the parish of Caddo and the city of Shreveport from collecting the taxes so assessed. There was judgment for defendants rejecting.plaintiffs’ demands and ordering their suits dismissed. Plaintiffs appealed.
 

 1. The admitted facts are that these life insurance companies issue policies only upon the payment in advance of the premium for the first year and that the policies lapse, according to their precise terms, at the end of the year, or within a stipulated number of days of grace, unless the premiums for an additional year are paid in advance; that throughout the life of the policies, all premiums are payable in advance; that the payment of these premiums is purely optional with the policyholders; and that the companies cannot enforce the payment of either the first or any subsequent premium by an action at law.
 

 Counsel for these defendants say in their brief:
 

 “And we might agree that an uncollected life insurance premium is not such an obligation as may be enforced by suit against the insured.”
 

 Under the agreed statement of facts, counsel could ill afford to do otherwise than make the above admission. And yet that admission is utterly fatal to their case.
 

 The reason is that these so-called “credits” are assessed as property when as a matter of fact they are not property. If they are not property there is no basis for the assessment. The word “property,” as that term is used in the statutes relating to assessment and taxation, refers to every species of valuable right or interest which is subject to ownership, or that which has an exchangeable value or which goes to make up one’s wealth or estate; all things which have a pecuniary value. “Property,” says Webster, “in a broad sense, is any valuable right or interest considered primarily as a source or element of wealth.”
 

 As defined by section 91, Act No. 170 of 1898, par. 2, “personal property” means and includes “all things other than real estate, which have any pecuniary value, and monies, credits, investments,” etc. The term “credit” includes “every claim and demand for money.” Paragraph 4. The term “property” as defined in section 1 of said act includes “promissory notes, open accounts, and other obligations,” as well as the “cash value of all judgments, suits and causes in action.”
 

 “The term ‘property’ is sufficiently comprehensive to include every species of estate,
 
 *935
 
 real and personal, and everything- which one person can own and transfer to another. It extends to every species of right and interest capable of being enjoyed as such upon which it is practicable to place a money value.” 22.R. O. L. 43, § 10.
 

 Act No. 109 of 1921 (Ex. Sess.) provides that taxes shall be assessed on all property situated in the state of Louisiana, except such as is especially exempted by law, and the term “property” is defined in section 2' of the act. It provides that the term “property,” as used in the act, includes,
 
 among other
 
 things, “bonds, notes, judgments, credits, accounts, or other evidence of indebtedness, and evpry other thing of value, in possession, on hand, or under the control, at any time during the calendar year for which taxes are levied.”
 

 According to the agreed statement of facts, policyholders in these life insurance companies get nothing except what they pay 'for in advance. They buy insurance for stated periods and pay for it before they get it. They never owe the companies for the premiums, but are always reguired to pay them in advance. When a policy is issued, the holder is under no obligation to pay future premiums, but is granted -the privilege of keeping the policy alive and in force by paying in advance the premiums year by year or at such stated intervals as may be agreed upon. If the premiums are not paid in advance the policy becomes void. In other words, when he secured insurance-by the issuance of the policy to him, he buys and pays in advance for protection for a stated period, and at the end of that period he has the option of buying in the same manner the same amount of protection for an additional period. He does not obligate himself to pay future premiums and the companies have no claim against him for them.
 

 The policies recite that “this contract is made in consideration of the payment of the first annual premium (or installments thereof). * * * The receipt of said premium or installment thereof is hereby acknowledged,” and that “all premiums) on this policy shall be paid in advance.”
 

 These companies have no right to claim or demand these premiums and have no right or cause of action to recover them, hut only a hope or expectancy that they will be paid.
 

 Under these contracts of insurance, the insurer has no more right to force the insured to pay future premiums on the policies than a shopkeeper has to force a man in the street to come into his shop and buy his wares. The companies hope and expect that their policyholders will pay future premiums; likewise the shopkeeper hopes that people will come in and buy. But this hope, this expectancy, is not property, having no commercial, exchangeable value.
 

 Uncollected premiums on life insurance policies are not “credits” in the sense that term is used in the statutes relating to assessments and the collection of taxes. The term “credit,” as used in the sense that it is property in the hands of one individual, necessarily implies that
 
 some
 
 other individual is indebted to him to the extent of the amount of the “credit.” As stated in Libby v. Hopkins, 104 U. S. 303, 309, 26 L. Ed. 772, “What is a debt on one side is a credit on the other, so that the term ‘credits’ can have no broader meaning than the term ‘debts.! ”
 

 
 *937
 
 In the case of State ex rel. Wolfe v. Parmenter, 50 Wash. 164, 96 P. 1047, 1049, 19 L. R. A. (N. S.) 707, the question whether a constitutional provision that all property shall be taxed precluded a legislative exemption of credits was involved, and after giving illustrations as to what credits are, the court said: '
 

 “Credits are, in effect, the mere legal right with which one is clothed to demand the delivery of money or other property in the future.”
 

 As the term “credit” is ordinarily used and understood and as the term is used in the statutes relating to assessments, it necessarily implies the idea of a debt or obligation to pay, and debt is an unconditional obligation to pay a sum certain at a future time. See “Credits” in Words and Phrases, First Series, vol. 2, p. 1728, and “Debt,” Words and Phrases, First Series, vol. 2, p. 1864.
 

 As these plaintiffs are not clothed with any legal right to demand payment of premiums on the policies which they issue, it follows necessarily that these uncollected premiums are not “credits” in the sense that term is used in the revenue statutes.
 

 Counsel for plaintiffs in their brief, under the heading “Assignment of Errors,” say the court erred in holding that where an assessment of uncollected life insurance premiums is made on the basis that such premiums are credits, “the same can be taxed on the basis that the right to receive voluntary cash payment of such premiums constitute a valuable right or privilege, subject to a property tax in the state of Louisiana.”
 

 The trial judge did not favor us with a written opinion, and we are not therefore advised by him as to the grounds on which he rested his conclusions. We must assume, however, that he did not base his opinion on the grounds above stated, because counsel for the appellees make it perfectly clear, in fact they stress the point, that the “tax in contest is not a tax on the ‘right to receive’ the premiums due .plaintiffs.” They say: “This is not a privilege or a franchise tax but it is an ad valorem' tax against plaintiffs’ property based upon the average amount of life insurance premiums receivable. * * * It is not a tax on the right or privilege to receive the payment. It is a tax on the property.”
 

 Counsel for appellees cite three casés decided by this court which they think support their, contention. The cases cited are State ex rel. Mechanics’ & Traders’ Insurance Co. v. Board of Assessors, 47 La. Ann. 1498, 18 So. 462, 470; Railey v. Board of Assessors, 44 La. Ann. 765, 11 So. 93, 94; and Liverpool & London & Globe Ins. Co. v. Board of Assessors, 44 La. Ann. 760, 11 So. 91, 16 L. R. A. 56.
 

 These cases have no application here for the reason that in each of them there was involved uncollected premiums due fire insurance companies and not life insurance companies. In each of the cases the court held that uncollected premiums due the fire insurance companies were properly assessed to them as “credits.” In the first of the cited cases the court said:
 

 “These uncollected premiums are mere debts in the course of collection. They are assets which have not yet materialized into cash; not yet realized.”
 

 
 *939
 
 In the third cabe, the uncollected premiums were referred to as “open accounts,” and in the second case, the court said:
 

 “Of the enumeration on the assessment roll everything is thus eliminated except the single item of ‘credits,’ and the evidence shows that these ‘credits’ consist of nothing but debts due the companies for uncollected premiums.”
 

 It is common knowledge that fire insurance companies and life insurance companies pursue entirely different methods in the matter of collecting premiums. Fire insurance companies issue policies for stated periods and the moment the policy is issued the premium is due for the entire period. The insured at once becomes indebted for the full amount of the premium. These companies do not collect the premiums in advance, but extend credit to the insured, and the amounts due them are carried on their books as open accounts which are frequently closed by notes. These amounts are debts in the true sense and are “credits’” in the hands of the companies.
 

 On the contrary, life insurance companies never issue policies except upon the payment of the premium in advance, and as to subsequent premiums, they must also be paid in advance, otherwise the policies become null and void. Policyholders in these companies are never indebted to the insurers for premiums. They sometimes become indebted to the companies for loans made on the policies, but the premium is paid through the loan and the insured becomes indebted for the loan and not for the premium. The distinction is concisely stated in Richards on the Law of Insurance (4th Ed.) § 361, and we quote the same as applicable to this case:
 

 “It is the regular thing in this country for the fire ofi marine insurer to issue his policy without exacting prepayment of the premium, and no clause of the usual policy prohibits this; but as soon as the policy is delivered the premium for the whole term whether one, three, or five, years, or other period, becomes a debt. * * *
 

 “But in the case of the ordinary life policy, the liability of the company does not attach at all, and no compensation is earned, until the first premium is paid, or until note, or credit, or other substitute, is accepted in its stead. Under such a policy the only result of nonpayment of the first premium is that the contract is not closed.
 

 “In like manner when the second premium becomes payable under the regular life policy, if the insured makes default in its payment the insurance terminates ipso facto, and no premium is earned or can be recovered by the company thereafter. Upon nonpayment of the premium in such a case the insurance ceases, and the insured on his part has no further claim upon the company except what is conferred by the nonforfeiture clause.”
 

 For the reasons assigned the judgment appealed from is reversed, and it is now ordered that there be judgment for plaintiffs and against the defendants in each of the cases canceling and erasing the assessment of the items listed as “credits.” It is further ordered that J. T. Tanner, tax collector for the city of Shreveport, and T. R. Hughes, sheriff and tax collector for Caddo parish,
 
 *941
 
 be and they are enjoined from collecting taxes from these defendants levied upon so-called “credits” as listed on the assessment rolls.