JANVIER, Judge.
These are consolidated cases 'in which the plaintiff, State Farm Mutual Automobile Insurance Company, is seeking the return of certain taxes paid under protest,— in one case, to the City of New Orleans, through its proper officials, and in the other, to the State of Louisiana, through its proper officials. The suits are brought under authority of Act No. 330 of 1938, LSA-R.S. 47:1576.
The taxes paid under protest resulted from an assessment made for the year 1949 against the plaintiff corporation of alleged uncollected premiums on liability insurance policies written by the company, which assessment was based on the theory that the said premiums were due and uncollected and therefore represented taxable credits and were properly assessed under authority of Act No. 170 of 1898, as amended by Act No. 109 of 1921, Ex.Sess., LSA-R.S. 47:1701, par. C.
The taxes paid under protest to the City of New Orleans amounted to $481.81, and the taxes paid under protest to the State *481 of Louisiana amounted to $191.70. In each of the two cases there was judgment as prayed for in favor of plaintiff, — in the one case against the City of New Orleans, and in the other against the State Tax Collector for the Parish of Orleans. Both respondents appealed to this Court. .
We, feeling that in each case there was involved the legality of a tax, transferred the appeals to the Supreme Court, under the authority of decisions of the Supreme Court. See 57 So.2d 798 and 800. The Supreme Court, however, overruled the decisions to which we have referred and on which we based our conclusion that the appeals should be heard by the Supreme Court and transferred the appeals back to this Court. 61 So.2d 872.
The contention of the State of Louisiana and of the City of New Orleans is that, on the contrary, whenever the company writes a policy of liability insurance and does not collect in advance the full premium established for the full term of the policy, it extends credit to the policyholder, and that this credit is subject to assessment and to the resultant liability for taxes.
It is the contention of the plaintiff that, as a result of its method of conducting its liability insurance business, there are never any uncollected premiums due to it, and consequently such premiums may not properly be classified as “credits.”
The insurance company shows that all of its automobile liability insurance policies state that they are issued for a term of six months, and that according to the terms of each policy, it is continued in force
“for such terms of six calendar months each thereafter as the required renewal premium is paid by the insured on or before the expiration of the current term and accepted by.the company.”
Each policy provides that the insured may cancel the policy at any time, in which case the return premium due to the insured shall be. “computed in accordance with the customary short rate table and procedure.” The policy also provides that it may be cancelled by the insurer, in which case the return premium due to the insured shall be “computed pro rata.”
It is the fact that each policy is issued for an initial period of six months and that each renewal is for a period of six months and that the premium is based on a coverage extending over six months that the respondents here base the contention that the company extends credits to its policyholders whenever' the full premium for any six month period is not paid in advance.
The company contends that, although in some instances it issues policies before the premium for the entire six month period has been paid, at no time and in no instance is a policy allowed to remain in force beyond the period for which a premium has been paid and that thus no credit is ever extended to any of its policyholders.
The evidence as to the company’s method of doing business is shown in detail in the record. The Comptroller of the company, Mr. G. B. Brown, explains this method as follows (P. 60):
“ * * * we issue one policy which the assured retains as long as he owns the automobile described therein and as long as he makes the called-for premiums in advance for the periods Called for. In other words, we issue a policy and demand an advance premium which will keep that policy in force only so long as that premium pays for the period. Before the expiration of that period he is sent a direct billing from the company for additional premium payments as will be due if he wishes to carry it for an extended period. If the money reaches the company’s hands before the expiration of the period covered by his previous payment his policy is automatically in force for the next period involved. If it doesn’t, it automatically goes out of existence at 12:01 AM of the expiration date of the premium previously paid.”
It thus appears that when an application for liability insurance is received from an automobile owner, he is advised as to *482 the rate for a coverage of six months and is told that if he is unable to pay in advance the entire premium for the six months coverage, nevertheless the policy will be issued and that the amount which he has paid, while not sufficient to continue the policy in force for the full six month period, will keep it in force for a portion of that time, he being advised as to just how long it will be kept in force by the partial payment and that thirty days before the expiration of that time he is given notice that if, before the expiration of that time, the balance of the premium has not been paid, the policy will be ipso facto can-celled pro rata at the expiration of the period for which the company has been paid the portion of the premium.
It is shown by the company, and there is nothing in the record to the contrary, that at no time in its history has it ever permitted such a policy to remain in force beyond the day to which, on a pro rata basis, the portion of the premium paid will carry it. In other words, it is shown that if a premium for, say six months, is $30 and the insured is able to pay in advance only $10, the policy is nevertheless issued, and the $10 paid will carry the policy for one-third of the six-month period or sixty days, and that thirty days before the expiration of that sixty-day period, the insured is given written notice that if the balance of the premium is not paid prior to the expiration of that sixty-day period, his policy will be automatically can-celled at the end of that sixty-day period.
It appears, however, and the respondents point to this as evidence of the extension of credit, that when the time arrives at which a policy is cancelled, if the insured, within ten days thereafter, tenders the balance of the premium, the company will reinstate the policy effective as of the date of cancellation. It is argued that this, in effect, constitutes an extension of credit during that ten-day period. The answer of the company is, however, that such reinstatement does not actually put the policy back into effect as of the date of cancellation and that if, during that ten-day period, a loss has been sustained by the insured, it may and always has denied liability, and that the only effect of this reinstatement is that the insured is saved the annoyance and delay that would result if it were necessary to make application for an entirely new policy.
Counsel for respondents maintain that the evidence does not show that such reinstatement which becomes effective as of the date of cancellation is not a full reinstatement. We think, however, that the evidence does show this. For instance, the testimony of Mr. Brown shows that if, within that ten-day period, it appears that a loss has been sustained, “it is just too bad. We have no liability * * And it was further shown that on several occasions this had occurred and that the company had successfully defended itself against claims for liability for loss occurring during that ten-day period. It is true that when counsel for plaintiff was asked to furnish a list of cases in which it had been held that the company was without liability, he agreed to do so, and then apparently overlooked filing that list. Nevertheless there is nothing in the record to contradict the statement that it had occurred on several occasions and that the company, although it had reinstated such policies as of the original dates of cancellation, had done so without assuming liability for losses sustained during that period.
We note that each policy contains a provision that although it is written for six months, it remains in effect for each additional six months for which a premium is paid in advance. This means that what the insurer does is to issue to each insured a policy which, at the will of the insured and if not cancelled by the insurer, may continue in effect not only for the original six months, but so long as the insured owns the particular automobile covered by the policy. In other words, these policies somewhat resemble life insurance policies on the automobile on which policies the insured pays a periodical premium in advance and which policies continue in effect so long as the insured pays each premium or portion thereof in advance of the day on which the policy would be can-celled for nonpayment of premium.
*483 In the case at bar it is quite evident we think that if the company conducts its business as it says it does and there is not a syllable in the record to show that it does not do so, then there is never a time at which it might bring suit against any one of its policyholders for a premium which has become due and which has not been paid.
The Comptroller of the company and its District Representative states unequivocally that regardless of the credit responsibility of the applicant for insurance no policy will be or has ever been issued except on the payment in advance of at least a portion of the premium for six months, and that likewise in no case has a policy been permitted to continue in force beyond the day to which the amount paid, if computed on a pro rata basis, will keep the policy fully paid up.
Mr. B. F. Merchant, the District Representative of the insurance company, was asked:
“Q. No matter how big he was good for you’d have to get the cash money? A. I’d have to get the money.”
Counsel for respondents say that, if under the facts shown here, this insurer may not be taxed on its so-called “credits”, neither may any insurer be taxed on unpaid premiums which are due and that both the City and the State will suffer enormous loss in income. If this is true, it is to be regretted, but we have more than grave doubt as to whether it is true because we are shown by the record that the method adopted by this company is followed by very few, if any, other companies except those engaged in the life insurance business. We shall later refer to the method adopted by life insurance companies.
The record shows that most companies, except those engaged in the issuance of life policies, extend credit to their policyholders. In other words, in most instances when a car owner applies to an insurance company for protection against liability, if he is satisfactory to the company, he is issued a policy and thereafter is sent a bill for the premium. He gets his policy and his protection commences before he pays his premium. Obviously he is extended credit and this credit is assessable. Not so with the policyholders of this company, for the record shows that when an application is made, not even a binder is issued until the premium is paid in advance, or there is paid a portion of the premium and if the policy is issued it remains effective only so long as the portion paid will carry it on a pro rata basis.
It is well known, as is stated in Kansas City Life Insurance Co. v. Hammett, 177 La. 930, 149 So. 525, that life insurance companies conduct their business on a pay-in-advance basis. No life insurance policy is effective before or beyond the period for which the premium is paid. Accordingly it was held in that case that the premiums could not be classified as credits and consequently could not be assessed for taxation. Of course, the reason for the holding was not that the company which was there involved was a life insurance company. It was the fact that the business of the company was conducted on a pay-in-advance basis and therefore there were never any premiums due and uncollected on policies in force.
The trial judge in his written opinion said:
“ * * * Any company, whether life, accident, fire or otherwise, that actually writes its insurance and receives its premiums on strictly a cash basis, comes within the purview of the cited cases. The rationale of the cited cases is the method employed and not the character of the insurance written.”
We agree fully with this statement.
Of course, it is true that this company, like any other company, could make its credits subject to assessment by having credits. It is true that by allowing its policies to remain effective beyond the time to which payment has been made, the company could create credits, but the record shows that it does not do so.
Counsel for respondents point to the language used in two cases as authority for the view that these premiums are as* *484 sessable. In State ex rel. Mechanics & Traders Insurance Co. v. Board of Assessors, 47 La.Ann. 1498, 18 So. 462, the Supreme Court, as is expressed in the syllabus, said:
“The uncollected premiums of an insurance company are not exempt from taxation as income.”
And in Standard Marine Insurance Co. v. Board of Assessors, 123 La. 717, 49 So. 483, 484, 29 L.R.A.,N.S., 59, the Supreme Court held that:
“ * * * Outstanding, uncollected accounts, it seems to us, are rather a common variety of credits. * * * ”
There can be no doubt that an outstanding, uncollected account, and we ourselves add the words, “which is due,” is a credit but we add that in our opinion, as a result of its method of operation, the plaintiff insurance company has never had outstanding uncollected accounts which were due. There is never due to the company an account for the collection of which it could maintain an action.
It is argued that, even if the company, as to the insured, may have the right to cancel the policy for nonpayment of the balance of the six months premium, there may be involved the rights of third parties, that is, persons who may sustain damage as a result of negligence of the insured and who, by reason of a state statute, such as Act No. 55 of 1930, LSA— R.S. 22:655, may have a right of action directly against the insurer. It is said that if, when the policy is issued, there is paid on the premium only so much as will carry the policy, say for sixty days, and on the sixty-first day an accident occurs as a result of which the insured may become liable to a third person who has sustained damage there would be liability in the insured directly in favor of the third party. That would no doubt be true if there had been no effective cancellation of the policy at the end of the sixty days, but the record discloses, without contradiction, that the insurer has never permitted this to occur. It has in every instance cancelled the policy at the end of the period for which it has received cash in advance.
Since the judgment was rendered in the district court, George Montgomery, Tax Collector for the State of Louisiana, has died, and his son, George Montgomery, Jr., has been made party defendant.
In the matter of State Farm Mutual Automobile Insurance Company v. Lionel G. Ott, Commissioner of Public Finance and Tax Collector for the Parish of Orleans, No. 20086, the judgment appealed from is affirmed.