EDWARDS, Judge.
Plaintiff-appellant sued to enjoin defendant-appellees from removing him from his position as member of the Greater Baton Rouge Airport Commission. When the preliminary injunction was denied, appellant was removed from the Commission. Appellant amended his petition and sought a declaratory judgment relative to his qualifications to hold the position on the Commission and alternatively asked to be reinstated to his former position of Executive Director and Secretary of the Greater Baton Rouge Airport District (District). The trial court rendered judgment in favor of defendants and against plaintiff, dismissing his suit. From this ruling plaintiff now appeals.
There are three issues before us:
1. Did appellant fulfill the requirement of Act 151 of 1969 that appointees to the Commission must own “property assessed in East Baton Rouge Parish ?”
2. If not, is that requirement violative of appellant’s rights under the Fourteenth Amendment to the United States Constitution guaranteeing equal protection of the laws ?
3. Was a contract of exchange effectuated between appellant and appellees whereby appellant was to give up his position as Director of the District in return for his appointment to the Commission, and did his removal from the Commission constitute a breach thereof warranting in law the relief of reinstatement to his former position?
FACTS
The facts as found by the trial court and as reflected by the record are not in dispute. Appellant served as Director of the District for a period of some five years until his resignation on May 13, 1974. Prior to this date, appellant had experienced increasing unspecified harassment in his capacity as Director. As a compromise gesture, he then proposed to Dr. C. O. Currier, member of the City-Parish Council, the appointing authority for the Commission, that he, appellant, would resign his position as Director in exchange for his being appointed to the Commission. On May 13, 1974 the appellant resigned as Director and was appointed to the Commission. Subsequently, the Parish Clerk declared appellant’s position on the Commission vacant. The basis for this action was a legal opinion of the Parish Attorney stating that appellant was not qualified to serve as member of the Commission be *813 cause at the time of his appointment he owned no property assessed in East Baton Parish. This suit followed.
(1) "Property assessed” under Act 151 of 1969
Act 151 of 1969 requires that an appointee to the Commission own “property assessed in East Baton Rouge Parish.” At the trial, appellant introduced evidence that he had paid sales tax on an automobile that he purchased prior to his appointment in 1974. He also introduced evidence of a purchase of a piece of immovable property located in East Baton Rouge Parish on February 7, 1975.
Initially, we agree with the trial court’s determination that the purchase on February 7, 1975, several months after the appointment, is irrelevant to the determination of appellant’s qualifications for the appointment. Qualifications for appointive office are determined at the time of the appointment.
The question remains whether the ownership of and the payment of sales tax on the purchase of the automobile satisfy the requirement of “property assessed.”
The appellant contended and the trial court agreed that the term “property” should include movables as well as immov-ables. Where, as here, there are no limitations placed on the term within the particular statute in question, both the legislation and jurisprudence support such a broad, unrestricted interpretation. See La.Civ. Code art. 14; La.Code Civ.P. art. 5251 (13); Kansas City Life Ins. Co. v. Hammett, 177 La. 930, 149 So. 525 (1933); 73 C.J.S. Property § 1.
The further qualification contained in the Act is that the property be “assessed in East Baton Rouge Parish.” Appellant argues that (1) property does not have to appear on the assessment rolls to be assessed and (2) the payment of a sales tax constitutes an assessment of that property. Pretermitting for the moment appellant’s initial contention, we cannot accept the argument that the payment of sales tax constitutes an assessment. Black’s Law Dictionary 150 (rev. 4th ed. 1968) makes clear the distinction between the two. “Assessment” is:
The listing and valuation of property for the purpose of apportioning a tax upon it, either according to value alone or in proportion to benefit received. Also determining the share of a tax to be paid by each of many persons; or apportioning the entire tax to be levied among the different taxable persons, establishing the proportion due from each. It fives the liability of the taxpayer and ascertains the facts and furnishes the data for the proper preparation of the tax rolls . . .
“Assessment” and “levy” are frequently used interchangeably . . . Though properly speaking it does not include the levy of taxes . . . Assessment is also popularly used as synonym for taxation in general, the authoritative imposition of a rate or duty to be paid, but in its technical signification it is only taxation for a special purpose or local improvement, local taxation as distinguished from general taxation; taxation on principle of apportionment according to the relation between burden and benefit; whole taxes are impositions for purpose of general revenue . . .
An assessment is doubtless a tax, but the term implies something more; it implies a tax of a particular kind, predicated upon the principle of equivalents, or benefits, which are peculiar to the persons or property charged therewith, and which are said to be assessed or appraised, according to the measure or proportion of such equivalents; whereas a simple tax is imposed for the purpose of supporting the government generally, without reference to any special advantage which may be supposed to accrue to the persons taxed. Taxes must be lev *814 ied, without discrimination, equally upon all the subjects of property; whilst assessments are only levied upon lands, or some other specific property, the subjects of the supposed benefits: to repay which the assessment is levied.
So defined, the payment of a sales tax does not constitute an assessment.
Although, as appellant contends, the appearance of property on the assessment rolls may not be the exclusive proof of assessment, such listing is indeed competent evidence, and such that the legislature might choose to rely upon for determining assessment and ownership of property assessed.
(2) Constitutionality of Act 151 of 1969
Does the requirement of Act 151 of 1969 that appointees own property assessed in East Baton Rouge Parish violate appellant’s right to equal protection of the law?
When a legislative classification is challenged, as here, on Fourteenth Amendment equal protection grounds, one of two tests may be applied to determine the validity of the statute. The “compelling state interest” test is applied when there is involved a “fundamental” right, such as the right to vote or to marry whomever one chooses, or when there is employed a “sus-p.ect” criterion, such as race or sex. In all other cases traditional equal protection standards apply. Appellant cites, and this court has found, no cases holding that the right to be considered for appointive public office is a fundamental right. Therefore, we will test the classification herein by traditional standards of equal protection.
Traditional standards of equal protection have been long established. In McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the Court summarized the rule:
The constitutional safeguard (equal protection) is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State’s objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. 81 S.Ct. at 1105
In enacting Act 151 of 1969, the legislature sought to insure that the members of the commission would have a substantial interest in performing their duties effectively and conscientiously. The legislature could have concluded reasonably that property owners of East Baton Rouge Parish would have that interest. To effectuate this objective, the legislature chose as its criterion for appointment to the Commission, the ownership of “property assessed in East Baton Rouge Parish.” The fact that the determination of property ownership could have been made otherwise in no way militates against the validity of the choice made. In the achievement of a valid legislative objective, there is no requirement under traditional equal protection standards that the legislature choose the best method available, but only that there be a rational basis for the means chosen.
La.R.S. 47:1956-1957 require every owner of property, movable and immovable, to submit to the Parish Assessor a list of that property. The legislature could have chosen to utilize this requirement as a simple method of determining property ownership for the purposes of eligibility for appointment to the Commission under Act 151 of 1969. Such a scheme is not irrational.
Appellant contends that the payment of sales tax on the purchase of an automobile should suffice to qualify him under the Act. . There is no doubt that the payment of such a tax is evidence of ownership of property, at least at the time of purchase. However, it does not constitute an assess *815 ment of his property, as indicated supra. At issue is the rationality vel non of the legislative scheme employed. The legislature chose to make assessment, rather than payment of sales tax, the criterion of ownership. We are not concerned with the relative merits of the possible schemes; the one chosen is rationally related to a valid legislative objective and is therefore constitutional.
Appellant cites Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970) as mandating that we hold Act 151 of 1969 unconstitutional. In Turner, the Court found a Georgia statutory requirement of ownership of immovable property for appointment to a county board of education to deny equal protection of the laws under the traditional test. However, considering our increasing population and diminishing availability of land, there are many good citizens who own no immovable property but who do own movable property in varying amounts. Therefore, a classification like that of the Georgia statute which eliminates those who own no immovable or real property from consideration for public office is far more invidious than one like ours which bars only those who own no property at all. With this in mind, we note the Court’s closing remarks in Turner, supra.:
Without excluding the possibility that other circumstances might present themselves in which a property qualification for office-holding could survive constitutional scrutiny, we cannot say, on the record before us, that the present freeholder requirement for membership on the county board of education amounts to anything more than invidious discrimination. (emphasis added). 90 S.Ct. at 542.
We therefore hold the legislative scheme employed under Act 151 of 1969 prima facie constitutional. There has been no allegation that the assessment practices as applied in this case are unconstitutional, nor has there been any evidence adduced on this issue. We cannot take judicial notice of the assessment practices of the assessor of East Baton Rouge Parish, La.R. S. 15:422. We therefore do not pass on the issue of the constitutionality of the application of the legislative scheme.
(3) Exchange
Appellant testified at the trial concerning his proposal to Dr. Currier and of the understanding that he, appellant, had that an agreement was made to “exchange” his position as Director for a position on the Commission. Because he was later ousted from the Commission, appellant now invokes La.Civ.Code art. 2663[1] for relief in the form of reinstatement as Director.
Appellant is not in a position to avail himself of the provisions of this article.
La.Civ.Code art. 2660 defines exchange as a contract whereby the parties give to one another one thing for another. La. Civ.Code arts. 2660-2667 (Of Exchange) are found in Book III of the Civil Code— “Of The Different Modes Of Acquiring The Ownership Of Things.” The last, Article 2667, states that, except for the differences found in the preceding seven articles, all the provisions relative to sales apply to exchange. Chapter 3 of Title VII (Of Sale) is titled “OF THINGS WHICH MAY BE SOLD.” “Effects of commerce” (Article 2448); “the rights, titles and interests to an inheritance” (Article 2449); “an uncertain hope ... as the fisher sells a haul of his net before he throws it” (Article 2451) — all are illustrative of the various things which may be sold or exchanged. However, implicit in every sale or exchange is ownership, acquired and divested. A public official does not own the public office he holds; he *816 cannot barter or sell his office as an effect of commerce, an inheritance right, an uncertain hope, or as anything else. He is elected or appointed to a position of fidelity to the public trust.
There is no merit in, and this court will not consider, applying the codal provisions of our private law of exchange to a political controversy involving the attempted barter of public office.
The decision of the trial court is affirmed at appellant’s cost.
AFFIRMED.

. The exchanger, who is evicted by a judgment of the thing he has received in exchange, has his choice either to sue for damages or for the thing he gave in exchange.